# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 11-501V
Filed: May 10, 2016
Not for Publication

```
*************************************
MEGAN MARIE FABISCH,                  *
                                      *
        Petitioner,                   *
                                      *
v.                                    *   Attorneys' costs decision; no
                                      *   response from respondent
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *
                                      *
        Respondent.                   *
                                      *
*************************************
```

P. Leigh O'Dell, Montgomery, AL, for petitioner.
Justine E. Walters, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' COSTS[1]

     Petitioner filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) on August 3, 2011. Petitioner alleged that her receipt of the human papillomavirus ("HPV") vaccine on January 22, 2009 caused her to develop an autonomic neuropathy and/or peripheral neuropathy, as well as preganglionic sudomotor dysfunction. Pet. at ¶ 4, 7. During a telephonic status conference on September 14, 2015, petitioner made a motion for a ruling on the record. On September 21, 2015, the undersigned issued a decision granting petitioner's motion and dismissing the case due to petitioner's failure

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

to prove her allegations.

On April 20, 2016, petitioner filed a motion requesting $22,781.00 in attorneys' costs. She does not request any attorneys' fees in her motion. On April 25, 2016, respondent's counsel informed the undersigned's law clerk that she does not intend to file a response to petitioner's motion for costs.

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." 42 U.S.C. § 300aa-15(e)(1). It is not necessary for a petitioner to prevail in the case-in-chief in order to receive a fee award as long as petitioner brought the claim in "good faith and there was a reasonable basis for the claim." Id. The special master has "wide discretion in determining the reasonableness" of attorneys' fees and costs. Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994); see also Saxton ex rel. Saxton v. Sec'y of HHS, 3 F.3d 1517, 1519 (Fed. Cir. 1993) ("Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications.").

The undersigned finds that petitioner brought this case in good faith because there is no evidence to the contrary. The undersigned also finds that there was reasonable basis for petitioner to bring this claim. Petitioner received the HPV vaccination and was diagnosed with a preganglionic sudomotor dysfunction, one of the injuries she alleged was caused by her HPV vaccination. See med. recs. Ex. 6, at 40. Moreover, by not filing a response, respondent has waived any objections to petitioner's motion for attorneys' costs. However, the undersigned *sua sponte* finds that the $12,125.00 petitioner requests for Dr. Gershwin's work on this case is not reasonable.

## PROCEDURAL HISTORY

In an order dated January 31, 2013, Special Master Dorsey, to whom this case was assigned at the time, ordered petitioner to file an expert report as soon as possible. On February 5, 2013, petitioner filed an expert report by Dr. Eric Gershwin, a rheumatologist and immunologist, dated November 30, 2012. See Ex. 13. Dr. Gershwin stated that the HPV vaccine caused petitioner to develop an autonomic sensory and motor neuropathy. Id. at 2. On November 7, 2013, respondent filed an expert report by Dr. Vinay Chaudhry, a neurologist. Ex. A. Dr. Chaudhry stated that there was no evidence supporting Dr. Gershwin's assertion that petitioner had a sensory, autonomic, or motor neuropathy. Id. at 5. Respondent filed an expert report from an immunologist, Dr. S. Michael Phillips, on December 9, 2013. Ex. E. Dr. Phillips agreed with Dr. Chaudhry's conclusion that petitioner did not have a peripheral neuropathy. Id. at 6. Dr. Phillips concludes that Dr. Gershwin misdiagnosed petitioner. Id. at 11.

During a telephonic status conference on February 5, 2014, petitioner's counsel said she would like to file a supplemental expert report by Dr. Eric Gershwin responding to respondent's expert report. Petitioner filed the supplemental expert report on March 10, 2014, which consisted of four pages. Ex. 82. In the report, Dr. Gershwin reiterated his earlier assertion that the HPV vaccine caused petitioner to develop a neuropathy. Id. at 3. However, as the undersigned noted in her decision dated September 21, 2015, Dr. Gershwin based his opinion solely on petitioner's complaints, not her medical records. Dec. at 3.

The case was transferred to the undersigned on January 8, 2015. On January 27, 2015, the undersigned issued an Order criticizing the two expert reports written by Dr. Gershwin because they did not address whether the HPV vaccine significantly aggravated petitioner's pre-existing preganglionic sudomotor dysfunction. Dr. Gershwin also did not discuss whether petitioner experienced more than six months of sequelae due to her alleged vaccine injury as required by 42 U.S.C. § 300aa–11(c)(1)(D)(i). Finally, the undersigned stated that Dr. Gershwin did not give any basis for linking preganglionic sudomotor dysfunction with an autoimmune sensory or motor neuropathy. The undersigned further explained that Dr. Gershwin's arguments in his expert reports did not make sense because petitioner's sensory and motor examinations were normal.

On February 2, 2015 the undersigned issued an Order in advance of a status conference scheduled for February 3, 2015. The undersigned explained that because Dr. Gershwin's earlier expert reports were based on the assumption of left-sided neuropathy symptoms, which were not supported by her medical records, petitioner needed to submit a supplemental expert report by Dr. Gershwin. The undersigned provided a list of ten points that she wanted Dr. Gershwin to address in his second supplemental expert report.

During the status conference on February 3, 2015, the undersigned gave petitioner's counsel 90 days to discuss the February 2, 2015 Order with her client, Dr. Gershwin, and a neurologist. On April 29, 2015, petitioner's counsel filed a status report which explained that Dr. Gershwin stood by his first two expert reports and would not be filing a second supplemental report. Petitioner asked for an additional 45 days to attempt to find a neurologist to support her case. The undersigned granted petitioner's request. On June 18, 2015, petitioner filed another status report stating that she had found a neurologist who was willing to write an expert report contingent upon petitioner undergoing testing for peripheral sympathetic nerve dysfunction. Petitioner asked for an additional 30 days to undergo the testing and submit her expert report. The undersigned granted the motion for extension of time contained in petitioner's status report, and set a deadline of July 20, 2015 for petitioner to submit an expert report. Petitioner asked for another extension of time on July 17, 2015, explaining that petitioner's skin biopsy test for small fiber neuropathy was now scheduled for July 23, 2015, which the undersigned granted.

On September 3, 2015, petitioner submitted a status report explaining that her test for small fiber neuropathy was negative and she would not be submitting an expert report by a neurologist, but that Dr. Gershwin still supported her claim that she had a neuropathy. On September 4, 2015, the undersigned issued an Order for petitioner to file her biopsy results, to provide these records to Dr. Gershwin, and to submit a supplemental expert report by Dr. Gershwin stating why he believes petitioner had a neuropathy.

Petitioner filed the records from petitioner's biopsy on September 14, 2015. During a telephonic status conference on the same date, petitioner's counsel made a motion for a ruling on the record. She explained that Dr. Gershwin was not willing to write another expert report in support of the case. On September 21, 2015, the undersigned granted petitioner's motion and dismissed the case for petitioner's failure to prove by preponderant evidence that she was entitled to compensation under the Vaccine Injury Compensation Program.

**DISCUSSION**

### I.   Reasonable Attorneys' Costs

Dr. Gershwin charged $12,125.00 for his work on this case. Fee App. Ex. B, at 2. This amount includes the following: a $1,000.00 retainer fee; $5,125.00 for Dr. Gershwin's first expert report, made up of 3.75 hours for reviewing petitioner's medical records, 6.5 hours for reviewing medical literature, and two hours for writing the expert report, less Dr. Gershwin's $1,000.00 retainer fee; $250.00 for 0.5 hours for reviewing petitioner's chiropractor records; $2,625.00 billed for reviewing respondent's expert reports and Dr. Chaudhry's publications; $2,125.00 billed for 4.25 hours for preparing a responsive expert report; and $1,000 for reviewing the undersigned's February 2, 2015 Order, reviewing medical files, preparing a response, and discussing the case with petitioner's counsel. Id. at 37, 39, 44, 46, 48, 50. The last billing was reduced by 2.5 hours "[a]s a courtesy to all involved." Id. at 50.

The undersigned appreciates that Dr. Gershwin reduced the amount he billed by 2.5 hours. However, the amount petitioner requests for Dr. Gershwin's work on this case is still not reasonable. An expert's opinion is only as good as its basis. See Perreira v. Sec'y of HHS, 33 F.3d 1375 (Fed. Cir. 1994) (affirming Special Master Golkiewicz's decision to not award the full amount of attorneys' costs requested by petitioners because the expert report on which petitioners relied was "grounded in neither medical literature nor studies"). Both of the expert reports written by Dr. Gershwin were based on his assumption that petitioner had a peripheral neuropathy, which was not supported by petitioner's medical records. It is not reasonable, then, for petitioner to receive full reimbursement for the amount she paid Dr. Gershwin. Therefore, the undersigned reduces the amount awarded for petitioner's costs by **$6,062.50**, which is 50% of the amount Dr. Gershwin billed for his work on this case.

### CONCLUSION

The undersigned has reviewed the remainder of the petitioner's requested costs and finds them to be reasonable. Therefore, the undersigned **GRANTS** petitioner's motion for attorneys' costs. The undersigned awards **$16,718.50**, representing reimbursement for attorneys' costs. The award shall be in the form of a check made payable jointly to petitioner and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. in the amount of **$16,718.50**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: May 10, 2016                                s/ Laura D. Millman
                                                    Laura D. Millman
                                                    Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.